**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CELLSPIN SOFT, INC.,<br>*Plaintiff*,<br>v.<br><br>BYTEDANCE LTD., BYTEDANCE PTE. LTD, TIKTOK PTE. LTD.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:23-cv-00496-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Defendants' Corrected Motion to Transfer. **Dkt. No. 19**. In their motion, Defendants seek transfer to the Northern District of California ("NDCA"), pursuant to 28 U.S.C. § 1404(a). *Id.* at 1-2. Having considered the motion, and for the reasons discussed below, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

Plaintiff Cellspin Soft Inc. asserts U.S. Patent Nos. 11,659,381, 8,756,336, 8,862,757, 8,898,260, 9,900,766, 8,904,030, and 11,234,121 (collectively, the "asserted patents") against Defendants ByteDance Ltd., ByteDance Pte. Ltd., and TikTok Pte. Ltd. ("Defendants"). Dkt. No. 19 at 1. All three listed Defendants are "organized in the Cayman Islands and Singapore," and not the United States. *Id.* The asserted patents are generally directed at Bluetooth interfaces with mobile applications.

## II. LEGAL STANDARD

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*").

The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Id.* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. See *Id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer. See *Volkswagen II*, 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in *Volkswagen I.*

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Id.* Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in

which the case was filed. *Id.* at 314-15; *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. See *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

## III. ANALYSIS

### A. Venue

Defendants acknowledge they are "are not residents of the U.S." *See* Dkt. No. 19 at 6. Accordingly, pursuant to 28 U.S.C. § 1391(c)(3) and 28 U.S.C. 1400(b),[1] venue is proper for foreign defendants in any district, including the Eastern District of Texas and Northern District of California. *See In re Princeton Digital Image Corp.*, 496 F. App'x 73, 75 (Fed. Cir. 2012) ("In [*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706 (1972)], the Court reaffirmed the long-standing rule that a patent infringement suit could be brought against a foreign defendant in any district court").

[1] In the Motion to Transfer, Defendants cite to 28 U.S.C. § 1391(b) for authority on venue. *See* Dkt. No. 19 at 6. While § 1391(c) is the relevant statute to determine a foreign corporation's residency, the Court notes that 28 U.S.C. § 1400(b) is the statute that governs venue in patent infringement actions.

**B. Private Interest Factors**

*1. Sources of Proof*

Defendants argue that since the accused products are developed in "China, Singapore, and…San Jose, California" and that there are "no employees in Texas who work on or have access to source code for the accused applications," the source of proof prong favors transfer. Dkt. No. 19 at 9. Defendants identify several other individuals and sources of information in Culver City, California, Seattle, and New York City. *Id.* at 9. Defendants argue that regardless of whether this information is electronic, since more information is located in NDCA and Defendants' information is not in this District, transfer is favored.

In response, Plaintiff argues that since Defendants' relevant evidence is held in locations throughout the country, access to relevant sources of proof in NDCA is not "clearly more convenient." Dkt. No. 57 at 3-4. Plaintiff adds that since the "third party sources of proof for this case include seven" data center companies located entirely in Texas, significant relevant evidence is located in Texas. *Id.* at 4.

The Court finds this factor neutral. As discussed in the compulsory process section, the Court finds that the nature of the accused functionalities and the asserted patents indicate that Plaintiff's named data center companies hold some relevant evidence. Furthermore, since Defendants hold relevant evidence throughout the United States, in addition to in Singapore and China, the Court finds that the sources of proof factor cannot favor transfer. Accordingly, the Court finds this factor neutral.

*2. Compulsory Process*

Defendants argue that since Plaintiff's allegations "implicate[] third-party entities such as Google [and] Apple . . . which are well-known to have strongest presence in California," the

compulsory process prong favors transfer. Dkt. No. 19 at 10. Defendants point to its "business interactions" with Google and Apple, which they argue indicate their employees may be relevant subpoena targets outside this Court's subpoena power. *Id.*

Plaintiff argues that this Court's subpoena power is necessary for seven Texas-based identified data center companies and its employees, which Plaintiff argues is relevant to "data storage, data upload, data transfer to China, data monetization, data security, and damages part of the trial." Dkt. No. 57 at 8. Plaintiff argues that Defendants' Google, Apple, and non-party TikTok witnesses "carry no weight," since no specific individuals are identified. *Id.* at 9-10. Plaintiff concludes that since the only identified unwilling witnesses are in Texas, the compulsory process disfavors transfer. *Id.* at 10.

In its reply, and following extensive venue discovery, Defendants argue that the Court should discount Plaintiff's data center companies, since Plaintiff has failed to tie these parties to the facts of the case, since they merely support content delivery networks and provide internet interconnection services. Dkt. No. 62 at 4. Defendants conclude that these services are not relevant to the asserted patents or accused products, "because where cached video content is stored has nothing to do with the claims or even this venue dispute." *Id.* For the Apple and Google witnesses, Defendants note that the declaration attached to their Motion to Transfer identified four relevant employees, and note that several employees "routinely work with Google and Apple for distribution of the accused applications in the U.S.: *Id.* (*citing* Dkt. No. 19-1 at ⁋ 22).

The Court finds that Defendants do not identify any third party witnesses relevant to this case, making this factor neutral. The asserted claims relate to a Bluetooth interface with a mobile application. Plaintiff asserts that Defendants' business requires data centers, content delivery networks, and internet connectivity. Likewise, Defendants make only conclusory statements that

Apple and Google witnesses, without substantiation, are "a necessary step for distribution of the accused applications in the U.S." This does not demonstrate that NDCA's subpoena power is necessary to produce this information. Therefore, the Court finds this factor neutral.

*3. Cost of Attendance for Willing Witnesses*

Defendants note that in addition to China and Singapore, the accused products were developed in San Jose, California and identify three San Jose-based employees relevant to this development. Dkt. No. 19 at 7. Defendants add that these three individuals are employees of related, U.S.-based companies, and not their own. *Id.* at 6-7. Defendants further identify employees located in Culver City, California and Seattle, who may be "knowledgeable about overall U.S. revenues attributable to the accused applications, and the full costs and profits associated with distribution of the accused applications." *Id.* at 8. Defendants conclude that since no relevant willing witnesses reside in this district, but three reside in NDCA, NDCA is the more convenient forum. *Id.*

In response, Plaintiff identifies 10 employees of Defendants who reside in Texas or reside closer to Texas than California. Dkt. No. 57 at 5-6. Plaintiff notes that the employee who provided the declaration that accompanied Defendants' Motion to Transfer lives and works in Austin, Texas, and disputes Defendants' characterization that one of its engineers lives in California. *Id.* at 6-7. For the latter, Plaintiff points to allegedly inconsistent deposition testimony, and argues that this engineer lives in Singapore, rather than California. *Id.* at 7-8. Plaintiff concludes that in light of these 10 employees, the willing witness prong disfavors transfer. *Id.* at 8.

In their reply, and following extensive venue discovery, Defendants argue that the Court should discount several of Plaintiff's listed employee witnesses. Dkt. No. 62 at 2. Defendants point

to several other California-based and foreign employees who are most knowledgeable about its business, and note that Plaintiff only chose to depose 2 of the 10 identified employees. *Id.*

The Court finds that the willing witness prong slightly favors transfer. Following extensive venue discovery, where Defendants identified witnesses most relevant to the case – none of which reside in Texas – Plaintiff continues to argue that several Texas witnesses are most knowledgeable about the accused products based on their job titles. Defendant identifies at least two relevant engineers, and two relevant business-side employees, Fan Peng and Vivian Du, who reside in NDCA. Weighing these four identified NDCA-based witnesses, and Plaintiff's identified Texas-based witnesses, the Court finds that this factor is largely neutral.

*4. All Other Practical Problems*

In their Motion, Defendants list no practical problems that affect transfer. *See* Dkt. No. 19. In response, Plaintiff raises several grounds, including that the asserted patents have already been asserted in other suits in this District, and that a pending law directing the sale of TikTok to U.S.-based owners may impede discovery if it is delayed by transfer. Dkt. No. 57 at 11-13.

The Court finds that these asserted grounds do not significantly affect the Court's transfer analysis. The existence of co-pending suits cannot alone create a practical problem that prevents transfer. *See In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)"). Instead, the Court must "look to the nature and character of the co-pending cases and their relation to this suit." *Ventures v. FedEx Corp.*, 2017 WL 3836127, at *4 (E.D. Tex. Apr. 18, 2017). Plaintiff merely argues that since the patents it asserted in this District are identical to the patents-in-suit, and that the patents it asserts in NDCA are different, transfer is disfavored. The Court finds that these co-

pending suits weigh only slightly against transfer. Finally, the Court finds the "all other practical problems" factor neutral.

**C. Public Interest Factors**

*1. Court Congestion*

Defendants argue this factor is neutral, despite this District's faster time-to-trial statistics in patent cases, since this "ability to set a schedule" does not speak directly to docket congestion. Dkt. No. 19 at 12 (*citing See In re Adobe*, 2020 WL 4308164, at *6 (Fed. Cir. July 28, 2020)).

Plaintiff argues that the court congestion factor disfavors transfer, since a similar case by Plaintiff "has been put on hold by the NDCA Judge," and that there is a "high likelihood" the same would occur if this case was transferred. Dkt. No. 57 at 14. Plaintiff argues that since it has a trial date set in this District, and since discovery may be interrupted with transfer, transfer is disfavored.

The Court finds this factor weighs slightly against transfer. *Volkswagen I* requires a court to consider "the administrative difficulties flowing from court congestion." 371 F.3d at 203. While Plaintiff identifies a similar case "put on hold by the NDCA Judge," Plaintiff identifies no facts to indicate that this stay resulted from court congestion in NDCA. However, there is no doubt that the time to trial in this division is shorter.

*2. Local Interest*

Defendants argue that since this case "involves adjudicating the alleged acts and consequences of the NDCA's own residents," including the "U.S. based developers of the accused applications," the local interest factor favors transfer. Dkt. No. 19 at 12.

In response, Plaintiff raises four grounds to argue that this District has a stronger local interest than NDCA. Dkt. No. 57 at 14. Plaintiff argues that "millions" of TikTok users reside in the district, that parents in the district have an interest in "what their children are allowed to search

for and view on TikTok," that Defendants' business involves integration with Texas based companies, and that "employees working for the State of Texas, including EDTX, are banned from using TikTok on government devices or platforms because of lack of security on the platform." *Id.* at 14-15. Plaintiff concludes that "EDTX citizens have strong localized interests" in having this case decided here. *Id.* at 15.

The Court finds this factor neutral. The local interest factor requires a court to consider "significant connections between a particular venue and the *events that gave rise to a suit*." *In re Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). While Plaintiff raises four grounds that they allege disfavor transfer, the first two raise concerns applicable nationwide. The latter two grounds broadly concern Defendants' product, however, since Plaintiff's broad assertions fail to connect these grounds to the infringement they allege, the Court finds that they do not indicate this District is the favorable forum. While Defendants are correct that the identified U.S.-based engineers who worked on the accused product are located entirely in NDCA, they also admit that this development is shared with "engineers in Singapore and China." *See* Dkt. No. 19 at 7. Given the accused product's "international" nature, along with the small number of employees located in NDCA, the Court cannot find that a "significant connection" exists between these employees and the alleged infringement.

*3. Familiarity with Governing Law & Conflicts of Laws*

Defendants argue that NDCA is "intimately familiar with [Plaintiff], its principal, and the patented technology," since Plaintiff has filed "dozens" of lawsuits there since 2017. Dkt. No. 19 at 11. Defendants conclude that since "NDCA has already dealt with [Plaintiff] and its principal on many fronts, and it is well aware of [Plaintiff's] allegations, the susceptibility of [Plaintiff's] patents to certain challenges (such as § 101 and non-infringement), and the conduct of [Plaintiff's]

principal and its counsel" transfer is favored. *Id.* This is not the "law that will govern the case." The governing law of this case is Federal patent law, which both forums are equally equipped to handle. Since neither party raises a conflict of law argument, the court finds both factors neutral.

## IV. CONCLUSION

Having considered the Motion, and for the reasons discussed above, the Court finds that Defendants, foreign corporations all, have not established that the Northern District of California is the "clearly more convenient" venue to litigate this action. Accordingly, the Court **DENIES** Defendants' Motion.

**SIGNED this 10th day of November, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE